UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **Jessica Berg, on behalf of herself and all others similarly situated,** | : : : | Case No.:_____ |
| Plaintiff, | : : : | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| vs. | : : | |
| **Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield,** | : : : : : | |
| Defendant. | : | |

NOW COMES plaintiff Jessica Berg, on her own behalf and on behalf of all others similarly situated, asserts to the best of her knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

### A. INTRODUCTION

1. This lawsuit presents a narrow issue that is of critical importance – may a health insurer deny coverage for mental health treatment in circumstances where there is no corresponding limitation for treatment for physical injury and <u>not</u> violate the federal Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act")? Defendant's denial of coverage for services rendered at a residential treatment center breaches the protections of the Parity Act, which are – as a matter of law – embedded as a material term of the contract of insurance that governs the rights and responsibilities of these parties.

2. Plaintiff received her health insurance through her employer, Case Western Reserve University, a private university located principally in Cleveland, Ohio, within this judicial district. This self-funded plan is administered by defendant Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield ("Anthem").

1

As described in the certificate of coverage, a standardized form document attached at **Att. A**, Anthem has complete discretion to interpret the certificate and its determination "shall be final and conclusive." (**Att. A, p. M-92**). Plaintiff's daughter, T.N., date-of-birth June 1, 1999, is a covered beneficiary under this plan, as well.

3. On information and belief, Anthem's certificate of coverage attached at **Att. A** is materially identical to the other benefit booklets provided to the self-funded plans it administers.

### JURISDICTION AND VENUE

4. This Court has jurisdiction in this ERISA matter via 28 U.S.C. § 1331.

5. Venue is appropriate in this district because plaintiff and Anthem are located here, and the breaches at issue took place here. 29 U.S.C. § 1132(e)(2).

6. In conformity with 29 U.S.C. § 1132(h), plaintiff has served this Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

### PARTIES

7. At all relevant times, plaintiff was a full-time employee for Case Western Reserve University. She currently lives in Pepper Pike, Ohio. Her employer-sponsored health insurance at issue in this litigation was administered by Anthem and is thus regulated by ERISA, 29 U.S.C. §§ 1001-1191c. Plaintiff's minor daughter was also covered under his plan. Under ERISA, plaintiff is a "plan participant" 29 U.S.C. § 1002(7) and her daughter is a "beneficiary." 29 U.S.C. § 1008.

8. Defendant Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield is a non-profit company incorporated in Ohio with its principal place of business located in Mason, Ohio. In this Complaint, "Anthem" refers to defendant

Community Insurance Company d/b/a Anthem Blue Cross and all related, successor, predecessor, parent and subsidiary entities to which these allegations pertain.

9. Anthem had full discretionary authority to administer the plan and accordingly owes fiduciary obligations to plan participants and beneficiaries.

**FACTS**

**A.    Coverage**

10. Under the terms of the plan, Anthem is required to authorize coverage for "covered services." The plan's definition of "covered services" is services, supplies or treatment as described in this Benefit Booklet which are performed, prescribed, directed or authorized by a Provider. To be a Covered Service, the service, supply or treatment must be:

> Medically Necessary or otherwise specifically included as a benefit under the Plan.
>
> Within the scope of the license of the Provider performing the service.
>
> Rendered while coverage under the Plan is in force.
>
> Not Experimental/Investigative or otherwise excluded or limited by this Benefit Booklet, or any amendment or rider thereto. (**Att. A, p. M-94**).

11. Medically necessary and medical necessity are, in turn, defined as "[a]n intervention that is or will be provided for the diagnosis, evaluation and treatment of a condition, illness, disease or injury and that is determined by [Anthem] to be:

> Medically appropriate for and consistent with the symptoms and proper diagnosis or treatment of the Member's condition, illness, disease or injury;
>
> Obtained from a Provider;
> Provided in accordance with applicable medical and/or professional standards;
>
> Known to be effective, as proven by scientific evidence, in materially improving health outcomes;

The most appropriate supply, setting or level of service that can safely be provided to the Member and which cannot be omitted consistent with recognized professional standards of care (which, in the case of hospitalization, also means that safe and adequate care could not be obtained in a less comprehensive setting);

Cost-effective compared to alternative interventions, including no intervention. Cost Effective does not always mean lowest cost. It does mean that as to the diagnosis or treatment of the Member's illness, injury or disease, the service is: (1) not more costly than an alternative service or sequence of services that is medically appropriate, or (2) the service is performed in the least costly setting that is medically appropriate;

Not Experimental/Investigative;

Not primarily for the convenience of the Member, the Member's family or the Provider.

Not otherwise subject to an exclusion under this Benefit Booklet. (***Id.*, M-96**).

12. A Provider, in turn, is "[a] duly licensed person or facility that provides services within the scope of an applicable license and is a person or facility that the Plan approves." This includes certified nurse midwives, home health care agencies, alcoholism treatment facilities, home infusion facilities, licensed professional counselors, occupational therapists, independent social workers, professional counselors, retail health clinics, skilled nursing facilities, and social workers. (***Id.*, M-98-101**).

13. The plan specifically covers behavioral health benefits. (***Id.* at M-9, M-11**).

14. The plan specifically excludes "[c]are provided or billed by residential treatment centers or facilities, unless those centers or facilities are required to be covered under state law." (***Id.* at M-46**).

15. Plaintiff's daughter, who is covered under her mother's plan and is thus entitled to receive health insurance coverage based on the same plan language as her

4

mother's, has struggled for years with mental health issues such as eating disorder, borderline personality and attention deficit/hyperactivity disorder. In July 2014, at the recommendation of her therapist, plaintiff's daughter was sent to Vista Sage, a Utah-based licensed residential treatment center that specializes in the therapeutic treatment of adolescent women with comparable diagnoses.

16. While at Vista, T.N. received medically necessary mental health services, including psychiatric evaluation, individual therapy, group therapy and family therapy, all of which would have been authorized for coverage by Anthem if they had been delivered in another type of mental health setting.

17. Plaintiff paid $58,220 for services rendered at Vista from July through December 2014 and sought coverage. Her claims were denied by Anthem originally and on the first and second level appeals. In all cases, Anthem relied on the residential treatment exclusion discussed above. In no case did Anthem challenge the medical necessity of the services. The final denial was dated September 21, 2016.

18. Anthem's residential treatment center exclusion violates the federal Parity Act. The Parity Act was "designed to end discrimination in the provision of coverage for mental health and substance use disorders as compared to medical and surgical conditions in employer-sponsored group health plans and health insurance coverage offered in connection with group health plans." *American Psychiatric Ass'n v. Anthem Health Plans,* 50 F. Supp.3d 157, 160 (D. Conn. 2014). In relevant part, the Parity Act states:

> In the case of a group health plan (or health insurance coverage offered in connection with such a plan) that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that—

> (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii).

19. The issue as to whether an insurer may lawfully deny all mental health treatment rendered at a residential treatment center was considered in *Joseph & Gail F. v. Sinclair Servs. Co.,* 2016 U.S. Dist. LEXIS 8644 (D. Utah Jan. 22, 2016). There the court found that such a blanket exclusion violated the Act:

> To be sure, the Parity Act does not require plans to provide mental health or substance use disorder benefits at all. But once a plan does provide such benefits, the plan must do so on a level that is on par with the benefits it provides for medical and surgical benefits. And once provided, the Parity Act prohibits imposing treatment limitations applicable only to mental health benefits.
>
> Further, although the Administrator argues that the exclusion applies across the board, there is no evidence to suggest that coverage for residential treatment would have been available for medical or surgical conditions but for the exclusion. Without evidence to that effect, the Administrator's argument that it would have also denied residential treatment benefits for medical or surgical conditions under the exclusion is illusory.
>
> The court concludes that the Plus Plan's residential treatment exclusion violates the Parity Act because the exclusion is a "separate treatment limitation[] that [is] applicable only with respect to mental health . . . benefits."

*Id.* at *51.

20. Anthem's plan violates the Parity Act in exactly the same manner. Its blanket exclusion for services rendered at wilderness treatment programs is a separate treatment limitation applicable only to mental health benefits and thus violative of the Parity Act.

21. Plaintiff's ERISA-governed health plan incorporates the protection of the Parity Act through 29 U.S.C. § 1185a(a)(3)(A).

**CLASS ALLEGATIONS**

22. Plaintiff brings this lawsuit under Fed. R. Civ. P. 23(b)(2) on her own behalf and on behalf of the following class: *All persons who are covered under any ERISA-governed contract or plan of health benefits administered, underwritten or insured by Anthem that provides coverage for behavioral or mental health care but that categorically excludes coverage for behavioral health services rendered at residential treatment centers.*

23. Plaintiff brings this lawsuit under Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of the following subclass: *All persons who are covered under any ERISA-governed contract or plan of health benefits administered, underwritten or insured by Anthem that provides coverage for behavioral or mental health care and whose claims for coverage for behavioral health services rendered at residential treatment centers were denied because the contract or plan excluded such coverage.*

24. Membership in the proposed class and subclass is so numerous that individual joinder of all class members is impracticable except by means of a class action. The disposition of the claims in a class action will benefit both the parties and the Court. The exact number of class members can be readily determined through discovery of Anthem's business records.

25. Plaintiff's claims are typical of all other class members. All class members' claims are unified, as all are subject to Anthem's residential treatment center exclusion, which violates the protections of the federal Parity Act.

26. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the class and the sub-class. Plaintiff is a member of both the class and the subclass.

27. Plaintiff will adequately represent both the class and the subclass because she has interests in common with the proposed class members and plaintiff has retained attorneys who are experienced in class action litigation.

28. There is a well-defined community of interest in the questions of law and fact involving and affecting the class and the sub-class to be represented by plaintiff. Common questions of law and/or fact predominate over any questions affecting only individual members of the class. Common questions include, but are not limited to, the following:

   a. Whether Anthem's blanket exclusion of coverage for services at residential treatment centers violate the Parity Act?

   b. If Anthem's acts violate the Parity Act, what is the appropriate remedy?

   c. What is the appropriate measure of relief?

29. The prosecution of separate actions by individual members of the class and the sub-class would create a risk of:

   a. Inconsistent or varying adjudications concerning individual members of the class and/or subclass that would establish incompatible standards of conduct for Anthem opposing the class; and

   b. Adjudication with respect to individual members of the class and sub-class that would, as a practical matter, be dispositive of the interests of other members not parties to such adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

30. The class action method is appropriate for the fair and efficient prosecution of this action.

31. Individual litigation of all claims that might be asserted by all members of the class and the sub-class would produce such a multiplicity of cases that the judicial system, having jurisdiction of the claims, would remain congested for years. Class

treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of Anthem.

32. The certification of the above class and subclass would allow litigation of claims that, in view of the expense of the litigation, may be an insufficient amount to support separate actions.

## LEGAL CLAIMS

### Count 1 – Plan Enforcement under 29 U.S.C. § 1132(a)(1)(B)

33. Plaintiff restates paragraphs 1 – 32 as if fully set forth.

34. Plaintiff's first legal claim is brought under 29 U.S.C. § 1132(a)(1)(B). The class period for this claim extends back six years from the commencement of this action to the date of class certification. This claim is brought on behalf of both the class and subclass described above.

35. As a matter of law, plaintiff's benefit plans incorporate the Parity Act protections, which are incorporated in ERISA at 29 U.S.C. § 1185a(a)(3)(A)(ii).

36. Plaintiff has standing to assert claims "to recover benefits due … under the plan" and to "clarify [her] rights to future benefits under the terms of the plan," as authorized by 29 U.S.C. § 1132(a)(1)(B).

37. Anthem has breached the terms of its health plans through its violation of the Parity Act by its blanket refusal to cover treatment at residential treatment centers, causing injury to the plaintiff and both the class and subclass.

### Count 2 – Breach of Fiduciary Duty Under 29 U.S.C. § 1132(a)(3)

38. Plaintiff restates paragraphs 1 – 32 as if fully set forth.

39. Plaintiff's second claim is for breach of fiduciary duty as those duties are incorporated within the ERISA statute. The class period for this claim extends back six

years from the commencement of this action to the date of class certification. This claim is brought by both the class and subclass described above.

40. Under 29 U.S.C. § 1132(a)(3), a civil action may be brought by a participant or beneficiary "to enjoin any act or practice which violates any provision of [ERISA Title I]" or to "obtain other appropriate equitable relief … to redress such violations … [or] to enforce any provisions of" ERISA Title I.

41. As part of the Parity Act, effective January 1, 2009, ERISA was amended to add a provision titled "Parity in Mental Health and Substance Use Disorder Benefits." This section, 29 U.S.C. § 1185a(a)(3)(A), requires that, in the case of a group health plan or health insurance offered in connection with such a plan, "the financial requirements applicable to such mental health … benefits are no more restrictive than the predominant financial requirements applied to substantially all medical and surgical benefits covered by the plan" and "the treatment limitations applicable to such mental health … benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan."

42. Anthem's blanket exclusion of services rendered at residential treatment centers violates this Parity Act protection, which causes injury to plaintiff, the class and the sub-class.

    **WHEREFORE**, plaintiff requests the following:

- a. Certification of the class and subclass described above with the appointment of plaintiff as the class representative for the class and the subclass and the undersigned attorneys as class counsel;
- b. An award of benefits representing those sums that plaintiff and class members paid for services at residential treatment centers that should have been covered by Anthem;

10

c. Disgorgement of all profits Anthem enjoyed through the use of money that should have been used to pay plaintiff's and class's legitimate coverage claims;

d. An order requiring Anthem to cover all medically necessary services at residential treatment centers in the future;

e. Any and all other relief related to this action, including payment of reasonable fees, costs, and interest where permitted by law.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues that may be so tried.

Dated: May 30, 2017.    Respectfully submitted,

 */s/ Robert R. Sparks*
Robert R. Sparks
STRAUSS TROY CO., LPA
150 E. Fourth Street
Cincinnati, OH  45202-4018
Phone:  513-621-2120
Fax:  513-241-8259
Email: *rrsparks@strausstroy.com*

Jordan Lewis
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Telephone: 954-616-8995
Facsimile: 954-206-0374
Email: *jordan@jml-lawfirm.com*

*Counsel for Plaintiff*

12176197_1.docx